## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. _____

*In re* Application of

Clivedale Ventures Limited,
Clivedale Overseas Limited,
Papiss Limited, and IPMT
Limited,

     Applicants,

Pursuant to 28 U.S.C. § 1782 for Judicial
Assistance in Obtaining Evidence for Use in
Foreign Proceeding pending before the courts of
England & Wales.

_____/

### PETITION OF CLIVEDALE VENTURES LIMITED, CLIVEDALE OVERSEAS LIMITED, PAPISS LIMITED, AND IPMT LIMITED FOR JUDICIAL ASSISTANCE IN AID OF FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

Applicants, Clivedale Ventures Limited ("Clivedale Ventures"), Clivedale Overseas Limited ("Clivedale Overseas"), Papiss Limited ("Papiss"), and IPMT Limited ("IPMT"), hereby file their Petition for Judicial Assistance in Aid of Foreign Proceedings pursuant to 28 U.S.C. §1782 (the "Petition") and request the issuance of an order permitting the Applicants to obtain documentary and testimonial discovery from H.I.G. Capital LLC, Sami Mnaymneh, Tony Tamer, Rick Rosen, and Brian Schwartz (collectively, the "Discovery Targets") for use in civil proceedings in London, England. In support, Applicants state as follows:

#### INTRODUCTION

Applicants are the victim of a targeted fraud to deprive them of a unique development opportunity near Hyde Park in London, England, while pinning cost overruns on them for another project. Using their access to a now former CEO of the Clivedale Group, Mr. Laycock, the

1

Discovery Targets have tried to escape any responsibility for their actions, all of which were likely managed from Miami. This Court should grant the Application for the following reasons:

- Applicants fit comfortably within the statutory prerequisites imposed by 28 U.S.C. 1782 ("Section 1782"). They seek documents and testimony from discovery targets that are found in this District for use in a civil litigation in London, England.

- The discretionary factors favor the discovery requested. The Discovery Targets are not participants in the English court proceedings, the English courts are receptive to information sought, Applicants are not circumventing any restrictions in England, and the discovery targets are narrowly targeted by subject and timeframe so as to reduce any burden.

For these reasons and those below, Applicants request that the Court grant the Application in full.

## FACTUAL BACKGROUND

1.     The facts relevant to this Petition are set forth below and in the accompanying Declaration of Steven Craig McDonald ("McDonald Decl."), attached here as **Exhibit 1**. The facts stated in the Declaration are summarized below.

2.     Applicants seek assistance from this Court to obtain documentary and testimonial evidence from the Discovery Targets. McDonald Decl., ¶ 6.

3.     Applicants are associated with the Clivedale Group, a London-based super prime property developer. *Id*., ¶ 11. The Clivedale Group has developed significant luxury properties in London, including, among other projects, the Residences at Mandarin Oriental Mayfair.[1]

*The Joint Venture and the Unauthorized Side Agreement*

4.     On December 21, 2021, the Clivedale Group (through Papiss) entered into a joint venture agreement (the "**JV Agreement**") to develop 20-24 Carlton House Terrace in the St. James's district of Westminster, Central London. McDonald Decl., ¶ 15. Their joint venture partner is an entity affiliated with one of the Discovery Targets, H.I.G. Capital LLC ("**HIG**") (*id*., ¶ 15), which is an alternative asset

---

[1] www.clivedale.com

investment firm headquartered in Miami, Florida.[2] HIG states that it has over USD 72 billion in assets under management.[3]

5.      Tempus Holdings 99 S.à.r.l. ("**Tempus**") is the other joint venturer, and together Papiss and Tempus are joint venture partners in Jonah Limited ("**Jonah**"), a company incorporated under the laws of the Bailiwick of Jersey. McDonald Decl., ¶ 15. Jonah owns and controls a special purpose vehicle called Noah Limited ("**Noah**"), also incorporated in the Bailiwick of Jersey. *Id*. Noah owns the development (referred to as the "**Development**"). *Id*. The chart below illustrates the corporate structure.



6.      The JV Agreement required Papiss to make an initial capital contribution of £20,000,000 and a contingent capital contribution of £2,226,869; and Tempus had to make an initial capital contribution of £55,000,000 and a contingent capital contribution of £6,123,890. McDonald Decl., ¶ 15.

---

[2] https://hig.com/about/
[3] https://hig.com

7.      To further fund the Development, Noah entered into a credit facility dated December 20, 2021, and arranged by the London Branch of Deutsche Bank ("**DB**" and the "**DB Facility**"). *Id*., ¶ 16.

8.      In or around late 2022, Tempus, represented by a Mr. Christopher Zlatarev (who Applicants understand to be the Managing Director of H.I.G. Realty Partners in London and an LLP Member of HIG Advisors), and Papiss, represented by Mr. Laycock, then an employee of the Clivedale Group, informed DB that they anticipated significant cost overruns of approximately £12 to £14 million on the Development (the "**Costs Overrun**"), a sum in excess of that funded by costs overrun guarantees provided to DB by Papiss and Tempus, which were equal to the amounts of the parties' contingent capital contributions (the "**Cost Overrun Guarantees**"). *Id*., ¶ 17. Mr. Laycock was no ordinary employee. *Id*., ¶ 13. He was employed by Clivedale Ventures from October 23, 2012, to around June 30, 2023, and he was the CEO of the Clivedale Group from April 1, 2022, to June 30, 2023. *Id*. This was a position of the highest trust and importance to the group, but Mr. Laycock would forsake that relationship for his own benefit.

9.      In order to draw down further tranches of the DB Facility, Noah was required to fund the Costs Overrun to the extent it was not covered by the Cost Overrun Guarantees. *Id*., § 17. This additional capital required by Noah could and should have been met by Tempus (i.e., HIG) for two reasons:

- pursuant to the JV Agreement, the parties had agreed that Papiss had already provided its initial capital commitment of £20m in full and that, until such time as Tempus had provided its own initial capital commitment in full, all further committed capital (which included contingent capital contributions) was to be provided by Tempus; and

- as at the end of 2022 (*i.e.*, at the time of the Costs Overrun), Tempus had not provided its £55 million initial capital commitment in full. *Id*.

4

10.     However, rather than comply with the terms of the JV Agreement, Mr. Laycock (on behalf of Papiss) and Mr. Zlatarev (on behalf of Tempus) agreed that the Costs Overrun would be met (as in fact they were met) by a different formula that favored HIG, as follows:

- Tempus provided additional funding in the amount of £4,397,624 (the "**Tempus Costs Overrun Contribution**"); and

- Papiss provided additional funding in the amount of £1,599,136 (such sums having been calculated pro rata by reference to the parties' initial capital commitments, the "**Papiss Costs Overrun Contribution**"); with

- The Tempus Costs Overrun Contribution, but not the Papiss Costs Overrun Contribution, was treated as made pursuant to its initial capital commitment. *Id*., ¶ 18.

11.     This unauthorized side agreement between Mr. Laycock and Mr. Zlatarev was not in the Claimant's best interests, and in making the unauthorized side agreement, Mr. Laycock acted contrary to and in breach of various duties (including both fiduciary and contractual duties), which he owed to his employer (Clivedale Ventures) and other of Applicants by virtue of his position as a *de jure* or *de facto* director of various of those companies. *Id*., ¶ 19.

*The Heythrop College Opportunity*

12.     In or around June 2022, Mr. Laycock brought a potential development opportunity (Heythrop College in Kensington Square, Central London) to the attention of Clivedale Group's ultimate beneficial owner, Mr. Sameer Gehlaut ("**Mr. Gehlaut**"). *Id*., ¶ 20. Heythrop College had recently closed and was located near Hyde Park in Kensington, a prime location in Central London. *Id*., ¶ 20. Mr. Gehlaut subsequently visited the Heythrop College site and informed Mr. Laycock that he was interested in pursuing the development. *Id*. The projected profit for the Heythrop College development was £162,000,000. *Id*. Also in 2022, Mr. Laycock approached Mr. Gehlaut to discuss leaving his position at Clivedale Group. *Id*. He informed Mr. Gehlaut that he wished to set up his own development management company with existing employees of IPMT. Mr. Laycock

additionally proposed that this new company would provide services to existing Clivedale Group projects. *Id*.

13.    Mr. Gehlaut did not initially consent to Mr. Laycock's proposal, but Mr. Laycock had other ideas. *Id*., ¶ 21. Unbeknownst to Applicants and Mr. Gehlaut at the time, Mr. Laycock and another Clivedale Ventures employee (Mr. Alexander Scarlett) proceeded, in any event, to incorporate a new corporate entity, Altius Real Estate Limited ("**Altius**"), on January 6, 2023 and, in May 2023, Mr. Laycock, together with Mr. Christopher Hill (an employee of IPMT), both left the Clivedale Group to work full-time for Altius. *Id*.

14.    Applicants have learned that in late 2022, sometime before the incorporation of Altius, Mr. Laycock and at least Mr. Scarlett and Mr. Hill had in fact begun to work with HIG and/or Tempus in relation to development projects (including Heythrop College) for which Altius might bid jointly in the nine months before they eventually left Clivedale Group in May 2023 and at a time when they were still in the full-time employ of Clivedale Group. *Id*., ¶ 22.

15.    These development projects were each opportunities that the Clivedale Group could have pursued as investor and/or development manager. *Id*., ¶ 23. They were, as such, opportunities that Mr. Laycock was obliged as an employee and director to bring to the attention of Clivedale Group and, in particular, Clivedale Ventures, Clivedale Overseas, and/or IPMT and/or to pursue for the benefit of Clivedale Group, Clivedale Ventures, Clivedale Overseas and/or IPMT, but he did not do so. *Id*. As regards Heythrop College in particular, in circumstances where the Heythrop College development was subsequently pursued by Mr. Laycock through Altius together with HIG to the exclusion of Clivedale, it is the Claimant's inference and belief that Mr. Laycock instead chose to take the opportunity to HIG for its rather than Clivedale's benefit. *Id*.

*The Lawsuit in London*

16.     Applicants were none too pleased when they learned of the harm caused by Mr. Laycock and HIG. Applicants filed a lawsuit in the Business and Property Courts of England and Wales, Chancery Division, in the Business List (a docket dedicated to large commercial cases). The case number is BL-2025-000695 (the "Foreign Proceedings"). *Id.*, ¶ 9.

17.     The current defendants in the Foreign Proceedings are as follows:

•     H.I.G. Capital International Advisors LLP ("**HIG Advisors**"), a limited liability partnership incorporated under the laws of England and Wales;

•     H.I.G. European Capital Partners LLP ("**HIG Europe**"), a limited liability partnership incorporated under the laws of England and Wales;

•     Tempus, a private limited company incorporated under the laws of Luxembourg (together with HIG Advisors and HIG Europe the "**HIG Defendants**"); and

•     David Laycock, an English national domiciled in England. *Id.*, ¶ 10.

18.     There are two principal claims: dishonest assistance and unlawful means conspiracy. *Id.*, ¶¶ 24, 28. As explained by Mr. McDonald, a seasoned lawyer in London, these are part of the umbrella of fraud claims available in the courts of England and Wales. *Id.*, ¶ 24, FN 2. The claim for dishonest assistance is essentially a breach of trust or fiduciary duty with the assistance of a third party. *Id.*, ¶ 24. Applicants will have to show that some or all of the HIG entities were involved. *Id.* The same is true for the unlawful means conspiracy claim. *Id.*, ¶ 28. There must be a "combination or agreement between two or more legal persons" similar to conspiracy claims in our system. *Id.*

19.     Applicants filed their claim form and particulars of claim (similar to a complaint) on May 23, 2025. *Id.*, ¶ 31. Applicants discontinued their claim against HIG Capital based on certain representations regarding the absence of its role in the dispute. *Id.* On October 20, 2025, the HIG Defendants filed an application to strike out the claims against them, which is like our

motion for judgment on the pleadings. *Id.*

20.     Applicants have requested certain documents from Defendants, but they have been

unsuccessful, requiring them to seek the assistance of this Court. Composite Exhibit 2, letters dated

December 8, 11, and 17.

*The Discovery Targets and their Relation to the Foreign Proceedings*

21.     There are five Discovery Targets, which are described below:

- H.I.G. CAPITAL LLC ("**HIG Capital**"). A limited liability corporation incorporated under the laws of the state of Delaware. The HIG Capital website describes HIG as being headquartered at 1450 Brickell Avenue, 31st Floor, Miami, FL 33131.[4] Applicants understand that HIG Capital is the ultimate beneficial owner of the funds which own and control Tempus, which is the vehicle through which HIG invested in the Development. McDonald Decl., ¶ 33.

- Sami Mnaymneh. Founder, executive chairman and CEO of HIG Capital. Mr. Mnaymneh is a US Citizen[5] who is listed on the HIG Capital website as being based in London and Miami, Florida,[6] and is described in other public sources as having his residence in Miami Beach, Florida.[7] The HIG Capital website further states that Mr. Mnaymneh "approves all capital commitments made by H.I.G." *Id.*

- Tony Tamer. Founder and executive chairman of HIG Capital. Mr. Tamer is a US citizen[8] who is listed on the HIG Capital website as being based in Miami, Florida, and New York City, New York.[9] The HIG Capital website further describes that Mr. Tamer has "directed H.I.G.'s development since its founding in 1993 and approves all capital commitments made by H.I.G." *Id.*

- Rick Rosen. Co-president of HIG Capital. Applicants understand that Mr. Rosen is a US Citizen. Mr. Rosen is listed on the HIG Capital website as being based in Miami, Florida[10] and other public sources indicate that Mr. Rosen resides in Coral Gables, Florida.[11] The HIG Capital website states that Mr. Rosen "directs the day-to-day operations of the firm and sits on the investment committees for all H.I.G. funds." *Id.*

---

[4] https://hig.com/contact/
[5] https://find-and-update.company-information.service.gov.uk/officers/KsSBfTeRVY52l9VjGB4wV1utPjk/appointments
[6] https://hig.com/team/sami-mnaymneh/
[7] https://www.forbes.com/profile/sami-mnaymneh
[8] https://find-and-update.company-information.service.gov.uk/officers/99itYAPbrUxbXD08WFq7Q8_k5XA/appointments
[9] https://hig.com/team/tony-tamer/
[10] https://hig.com/team/rick-rosen/
[11] https://jillszeder.com/agents/kara-zederSami-rosen/

- Brian Schwartz. Co-president of HIG Capital. Applicants understand that Mr. Schwartz is a US Citizen. Mr. Rosen is listed on the HIG Capital website as being based in Miami, Florda[12] and other public sources indicate that Mr. Rosen resides in Miami, Florida.[13] The HIG Capital website states that Mr. Schwartz "directs the day-to-day operations of the firm and sits on the investment committees for all H.I.G. funds." *Id.*

22.     HIG Capital and the four individuals are highly likely to have relevant documents and testimonial evidence. In SEC filings from around the time that the JV Agreement was negotiated describe how H.I.G. Capital's investment process is "centered around its investment committees which review all of H.I.G. Capital's deals across all strategies …benefitting from years of accumulated pattern-recognition experience of H.I.G. Capital's key decision makers: firm co-founders Mr. Mnaymneh and Mr. Tamer and firm co-presidents Rick Rosen and Brian Schwartz."[14] *Id.*, ¶ 34.

23.     Because the Foreign Proceedings concern: (i) an investment in the Development; (ii) a capital commitment in the form of the Tempus Costs Overrun Contribution; and (iii) potential investments in developments such as Heythrop College, it is highly likely that each of Respondents has relevant documents relevant and testimonial evidence for to the Foreign Proceedings within their possession, custody or control. *Id.*, ¶ 36.

24.     Further, *prima facie* none of the Respondents are Defendants to the Foreign Proceedings. *Id.*, ¶ 37. This is an important distinction. Under English Law, Applicants do not therefore have an automatic legal right to obtain disclosure (*i.e.*, discovery) from Respondents. *Id.*

<u>**The Requested Discovery**</u>

25.     Applicants propose to serve the Discovery Targets with a subpoena in a form

---

[12] https://hig.com/team/brian-schwartz/
[13] https://jewishmiami.org/news/extra/brian_schwartz/
[14] https://www.sec.gov/Archives/edgar/data/1823776/000119312520256732/d863069ds1.htm

substantially similar to the ones attached here as **Exhibits 3-7.** The subpoenas seek documents as well as testimony.

26.      There are five categories of documents sought, which Applicants describe below. The deposition testimony would relate to the five categories of documents requested.

27.      **Category 1**. Documents relating to the building costs (including but not limited to the Costs Overrun) of the Development created or received in the period September 1, 2022, to June 1, 2023. For the avoidance of doubt this includes internal documents recording any discussion or decisions (including investment committee papers) in relation to such building costs.

28.      **Category 2**. Documents relating to any consideration of investment in or development of Heythrop College created or received in the period June 1, 2022, to June 30, 2023. For the avoidance of doubt this includes internal documents recording any discussion or decisions (including investment committee papers) in relation to Heythrop College.

29.      **Category 3**. Documents relating to investment or development opportunities offered to, by, or in conjunction with Altius (or its principals) created or received in the period September 6, 2022, to June 30, 2023. For the avoidance of doubt this includes internal documents recording any discussion or decisions (including investment committee papers) in relation to such investment or development opportunities.

30.      **Category 4**. Documents relating to any investment or development opportunities received from any of Mr. Laycock, Mr. Scarlett, Mr. Christopher Hill, or Mr. Duncan Crouch created or received in the period June 1, 2022, to June 30, 2023. For the avoidance of doubt this includes internal documents recording any discussion or decisions (including investment committee papers) in relation to such investment or development opportunities.

31.      **Category 5**. Documents that evidence and/or relate to any communications

between HIG Capital, on the one hand, and Altius and/or Messrs Laycock, Scarlett, Hill and/or Crouch, on the other hand, in respect of any investment or development opportunities which are the subject of Categories 2, 3 and 4 above, created or received during the applicable time periods specified in each of Categories 2, 3 and 4.

32.     The Requested Discovery is targeted at documents and testimony necessary for Applicants to make their case in London. The categories are narrowly tailored both in terms of the relevant dates and the documents sought. This ensures the Requested Discovery is not overly broad or unduly burdensome.

33.     A 1782 petition is normally presented and granted *ex parte* in this District to allow the applicant to serve the subpoenas. Once served, the discovery target has the opportunity to respond to the discovery, including raising any objections. *See In Clerici,* 481 F.3d 1324, 1329 (11th Cir. 2007) (acknowledging the court's granting of the petition on an *ex parte* basis). That being said, Applicants have chosen to waive their right to proceed *ex parte* and are serving the Application with its exhibits as soon as practicable after filing.

## JURISDICTION AND VENUE

18.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1782 as this is an application for discovery seeking the production of documents and testimony located within this District by a party to a foreign proceeding.

19.     Venue in this District is appropriate because the Discovery Targets are all found in this District and the discovery sought is also located within this District.

## LEGAL ARGUMENT

The Petition meets the statutory requirements of 28 U.S.C. § 1782, as well as the discretionary factors outlined in the relevant case law. For the reasons set forth below, Applicants

request that the Petition for discovery be granted.

## I.      Legal Standard

Section 1782 was created to "provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices,* Inc., 542 U.S. 241, 247 (2004). "Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings" pursuant to Section 1782 to include "documentary and other tangible evidence as well as testimony." *Id.* at 247-48.

The Eleventh Circuit repeatedly has recognized the liberal policy in favor of granting petitions for judicial assistance under Section 1782. *See, e.g., Glock v. Glock, Inc*., 797 F.3d 1002, 1007 (11th Cir. 2015) ("The current embodiment of the [Section 1782] law reflects the policy choice to provide efficient means of assistance in our federal courts for litigants involved in international litigation and to prompt foreign courts to follow our generous example and provide similar assistance to our court systems.") (quotations omitted); *In re Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 747 F.3d 1262, 1269 (11th Cir. 2014) ("[T]he history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance") (quotation omitted); *In re Clerici*, 481 F.3d at 1333 (affirming order granting discovery under Section 1782).

Section 1782 states, in relevant part, that

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has

> power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (2016).

U.S. courts have identified a two-part inquiry in reviewing Section 1782 applications: first, whether a district court is authorized to grant relief under the statute, and second, whether the court should grant relief in its broad discretion. *Consorcio Ecuatoriano de Telecomm.,* 747 F. 3d at 1271. A district court has broad discretion to grant relief when the following four statutory requirements are met: (1) the person from whom discovery is sought must reside or be found in the district in which the petition is filed; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing;" (3) the request must be made "by a foreign or international tribunal" or by "any interested person;" and (4) the evidence must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); *In re Clerici,* 481 F.3d at 1331.

Once the district court has determined that it is authorized to grant relief, it is free to grant relief in its broad discretion. "In making its determination, district courts must exercise their discretion with an eye towards the statute's goals, *i.e.*, providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of N. Am. Potash, Inc*., 12-20637-CV, 2012 WL 12877816, at *5 (S.D. Fla. Nov. 19, 2012) (internal citation and quotation omitted),

report and recommendation adopted, 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013); *see In re Pimenta*, 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013) (citing the same "twin aims of the statute"). "As a general matter, these considerations counsel heavily in favor of generous federal court assistance." *N. Am. Potash, Inc.*, 2012 WL 12877816, at *5.

The Supreme Court set forth various discretionary factors for courts' consideration in *Intel*:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence may be "unobtainable absent § 1782(a) aid;"

> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"

> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and

> (4) whether the § 1782(a) request is "unduly intrusive or burdensome." 542 U.S. at 264-65; *Consorcio*, 747 F.3d at 1272-73.

## II. This Court has the Authority to Grant the Petition because it meets the Statutory Requirements for Relief

For reasons elaborated below, this Court should find that the Petition meets all four statutory requirements for granting Section 1782 relief.

### A. The Discovery Sought is Permissible and the Discovery Targets are Found in this District

The first two statutory requirements of Section 1782 are met here. The attached subpoenas reflect requests for documentary and testimonial discovery, which are the kinds of discovery are expressly permitted by Section 1782. The next requirement is that the Discovery Targets must found in this District. Applicants easily satisfy this showing.

14

A company or person "resides or is found in" this District if it transacts business in this District or has an office here, or if it may otherwise be served with a subpoena in this District. *See Ecuatoriano de Telecomm.*, 747 F.3d at 1269 (it was undisputed that "JAS USA . . . has an office and does business in Miami and is therefore 'found in the district of the district court ruling on the application for assistance'—namely, the Southern District of Florida."); *In re Emergency Ex Parte Application of Godfrey*, 17-21631-CV, 2018 WL 1863749, at *8 (S.D. Fla. Feb. 22, 2018), report and recommendation adopted *sub nom. In re Godfrey*, 17-21631-CIV, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018) ("tag jurisdiction" is sufficient to meet Section 1782 element, relying on *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002), which holds "that if a person is served with a subpoena while physically present in the district . . . then for purposes of [Section] 1782(a), he is 'found' in that district").

All five Discovery Targets can be found in the Southern District of Florida. HIG Capital maintains an office at 1450 Brickell Avenue, which its website describes as the "headquarters" of the business.[15] Mr. Mnaymneh is described as "based" in Miami and having his residence in Miami Beach, Florida. Mr. Tamer is also described as "based" in Miami and appears on Sunbiz as the manager of HIG Capital with an address of 1450 Brickell Avenue. Mr. Rosen lives in Coral Gables and manages day-to-day operations of HIG Capital, which is headquartered in Miami. Mr. Schwartz resides in Miami and also manages day-to-day operations of HIG Capital. There can be no debate that the Discovery Targets are found in this District for purposes of satisfying this requirement under Section 1782.

### B.    The Requested Discovery is for "Use in a Foreign Proceeding" by an "Interested Person

The remaining statutory requirements are also easily met. The discovery sought is for use

---

[15] https://hig.com/contact/

in civil proceedings before the courts in the United Kingdom. Applicants are parties to those proceedings. *See* McDonald Decl., ¶ 10. Civil proceedings in other countries have regularly been recognized by this Court as qualifying as a "foreign proceeding" for purposes of a Section 1782 analysis. *See, e.g., Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* 747 F.3d 1262, 1271 (11th Cir. 2014); *In re Moussy Salem*, No. 1:23-cv-23186 (S.D. Fla. Sep 27, 2024) (adopting R&R that granted 1782 application for discovery to use before the courts in the United Kingdom).

Applicants, by definition, are an "interested person" because they are plaintiffs in the Foreign Proceedings. McDonald Decl. ¶ 10. There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [Section] 1782." *Intel*, 542 U.S. at 256; *Consorcio*, 747 F.3d at 1269 (it was undisputed that "[a]s a party to the dispute, [the Section 1782 applicant] plainly is an 'interested person'"). They seek to use the information gathered in the Foreign Proceeding, which is sufficient to meet the statutory requirement. *Petrus Advisers Investments Fund, L.P.*, No. 1:22-cv-22437 (S.D. Fla. Mar 9, 2023) (finding that the term "for use" has "only its ordinary meaning—that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding") (citation omitted).

In light of the above, Applicants have met the statutory prerequisites.

## III.   This Court Should Exercise its Discretion to Grant the Requested Discovery

As elaborated above, once this Court has determined that the statutory elements for relief under Section 1782 are met, it is free to grant discovery in its broad discretion. Here, the discretionary factors identified in *Intel* weigh in favor of granting the Petition.

**A.      The Discovery Targets are not participants in the foreign proceedings**

This Court has previously found that a Section 1782 petition "is more likely to be justified when the person from whom discovery is sought is not a participant in the prospective foreign proceedings…" *See, e.g., In re Republic of Argentina,* No. 20-cv-20589, 2020 WL 2046029 (S. D. Fla. Feb. 11, 2020). This is because nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach, and their evidence may be otherwise unobtainable absent Section 1782(a). *Intel,* 542 U.S. at 244.

The Discovery Targets are not participants in the Foreign Proceedings and have already rejected voluntarily providing any documents. McDonald Decl., ¶ 12; Ex. 4. Because the Discovery Targets are not participants in either of the foreign proceedings, this factor weighs in favor of granting the application. *See, e.g., See, e.g., In re Republic of Argentina,* No. 20-cv-20589, 2020 WL 2046029 (S. D. Fla. Feb. 11, 2020).

**B.      The English Courts are receptive to this Court's assistance**

English counsel for Applicants has advised that English courts are receptive to the documentary and testimonial evidence sought via this Petition. McDonald Decl., ¶ 45. *In re MTS Bank*, No. 17-21545-MC-WILLIAMS, 2018 U.S. Dist. LEXIS 107147, at *21 (S.D. Fla. June 27, 2018) ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, a district court should err on the side of permitting discovery.") (quoting *In re Kreke Immobilien KG*, 2013 U.S. Dist. LEXIS 160283, 2013 WL5966916, at *1; *Weber v. Finker*, 3:07-MC-27 J32MCR, 2007 WL 4285362, at *5 (M.D. Fla. Nov. 30, 2007) ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, . . . the Court determines that the second factor does not weigh against an exercise of discretion in Eurasian's favor."). Therefore, English courts will welcome any

documents or testimony found.

**C.    Applicants are not circumventing the foreign tribunal's proof gather restrictions**

Counsel for Applicants in England has advised that all evidence sought through this Petition would not circumvent any proof-gathering restrictions under English law. *See* McDonald Decl., ¶¶ 49-54. There is no explicit ruling or law that precludes foreign discovery. *In re Moussy Salem*, No. 1:23-cv-23186 (S.D. Fla. Sep 27, 2024) (adopting R&R that granted 1782 application for discovery to use before the courts in the United Kingdom). Applicants further provide case law from the English courts showing that English law has a liberal policy of accepting evidence. McDonald Decl., ¶ 47.

Moreover, Section 1782(a) does not incorporate an exhaustion requirement. *Godfrey,*17-cv-21631, 2018 WL1863749*, at *10* (S.D. Fla. Feb 22, 2018)*; see In re Clerici,* 481 F.3d at 1333 n.12 (noting that, in *Intel*, the Supreme Court held that Section 1782 does not impose a foreign-discoverability requirement and that "nothing in the text of [Section] 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there") (quoting *Intel,* 542 U.S. at 260); *In re Application of Mesa Power Group, LLC,* 878 F. Supp. 2d 1296, 1304 (S.D. Fla. 2012) (same). Applicants do not have to first seek production of the requested discovery from the English courts, eliminating any initial step.

Here, Applicants need the Requested Discovery, which is under the possession, custody or control of the Discovery Targets found in this District, to overcome the gamesmanship employed by the defendants in England. They refuse to provide documents and then seek dismissal on that basis. Ex. 4. Because the Discovery Targets are outside of the jurisdiction of the English courts, they cannot directly compel them to produce the Requested Discovery. McDonald Decl, ¶ 47. Thus, this factor weighs in favor of granting this Petition.

### D.    The Requested Discovery is not unduly intrusive or burdensome

Applicants have limited their discovery requests in both time and scope to information that is relevant to the Foreign Proceedings. The timeframes are quite short and based on the specific needs of the Foreign Proceedings. The individuals are directly involved in the processes and should expect that with deals of the size and complexity as the Development, or opportunities with over GBP 160 million in potential profit, there can instances of litigation that require ordinary discovery processes like the one proposed. It is irrelevant that the discovery may include documents outside of Miami, just so long as they are within the Discovery Targets possession, custody, or control. *In re: Eduardo Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 9 (11th Cir. Feb 7, 2023) (imposing no geographical limitation).

### CONCLUSION

For the reasons stated herein, Applicants request that the Court:

1.    Granti this Petition pursuant to 28.U.S.C. § 1782;

2.    Grant Applicants leave to serve the Discovery Targets with subpoenas substantially similar to that attached here as **Exhibits 3-7**;

3.    Reserve jurisdiction to grant Applicants leave to serve additional subpoenas as may be necessary to obtain the evidence described in this Petition; and

4.    Grant any other and further relief as the Court deems just and proper.

Dated: December 22, 2025

Respectfully submitted,

**GST LLP**
Rodney Quinn Smith, Fla. Bar No. 59523
e-mail: quinn.smith@gstllp.com
Katherine Alena Sanoja, Fla. Bar No. 99137
e-mail: katherine.sanoja@gstllp.com
78 SW 7th Street, Suite 500

Miami, FL 33130
Telephone: (305) 856-7723
*Attorneys for Applicants*

By: */s/ Quinn Smith*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 22, 2025, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF filing system.

By: <u>*/s/ Quinn Smith*</u>